UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| DENNIS HOF *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> NYE COUNTY *et al.*, <br><br> Defendants. | Case No. 2:18-cv-01492-RFB-GWF <br><br> **ORDER** <br><br> Plaintiffs' Motion for Temporary Restraining Order (ECF No. 3) |

Before the Court is Plaintiffs Dennis Hof ("Hof") and Cherry Patch, LLC's ("Cherry Patch") (collectively, "Plaintiffs") Motion for Temporary Restraining Order ("TRO") (ECF No. 3). For the reasons stated below, the Court GRANTS Plaintiffs' Motion.

I. **PROCEDURAL BACKGROUND**

Plaintiffs sue Defendants Nye County; Nye County Licensing Board ("Board"); Dan Schinhofen ("Schinhofen"), in his personal and official capacity; and Andrew Borasky ("Borasky"), in his personal and official capacity (collectively, "Defendants"). ECF No. 1. Plaintiffs allege Due Process and First Amendment violations of the United States Constitution and violations of the analogous provisions of the Nevada state constitution arising from County officials' decision to deny renewal of Plaintiffs' brothel license under the Nye County Code. Plaintiffs seek injunctive relief to reverse the Defendants' decision regarding Plaintiff's brothel license and to enjoin the Defendants from taking any action against Plaintiffs regarding licensing during the pendency of this litigation. The Court held a hearing on the matter on August 22, 2018

and on August 27, 2018. At the second hearing, the Court granted the motion on the record. This Order now follows.

## II. FACTUAL FINDINGS

Based on the record and the hearings (including witness testimony), the Court makes the following factual findings. The Court incorporates by reference its factual findings made on the record at the hearing on August 27, 2018. The Court summarizes and supplements those findings here.

### a. Nye County Code

To operate a brothel in Nye County, Nevada, a person must maintain a brothel license issued to him or her under Chapter 9 of the Nye County Code ("Code"). The Court finds the following Code provisions relevant:

The Code forms a Licensing Board, consisting of "[t]he Board of County Commissioners and the Sheriff." § 9.20.040. The Licensing Board "is the full and sole authority empowered to grant a license to operate a house of prostitution, and the sole authority to make, alter and rescind all necessary ordinances or regulations setting forth the terms and conditions upon which such licenses may be applied for, the terms and conditions under which such licenses shall be granted, revoked, limited or canceled, and any and all other ordinances or regulations necessary regarding the conditions under which said houses of prostitution may be allowed to operate." § 9.20.110(A).

Under the Code, the Licensing Board "is empowered and commissioned to act … to [g]rant or deny applications for licenses and impose conditions, limitations and restrictions upon the licensee [and] to [r]estrict, revoke or suspend licenses for cause, after hearing, as provided in this chapter." § 9.20.050(B)-(C). "Any license which is issued, or registration, or finding of suitability, or approval by the Board shall be deemed to be a revocable privilege and no person holding such a license or registration, or finding of suitability, or approval of the Board is deemed to have acquired any vested rights therein." § 9.20.060(B). Further, "an applicant for a license is seeking the granting of a privilege, and the burden of proving their qualifications to receive a license is at all times on the applicant." § 9.20.060(C). "An application for a license, determination of

suitability or registration, shall constitute a request to the Board for a decision upon the applicant's general suitability, character, integrity and ability to participate or engage in, or be associated with, houses of prostitution in the manner or position sought by the application." § 9.20.060(D).

To apply for a license, an applicant must "[m]ake application to the Board for a license in such form prescribed by the Board" and file the application with the required investigative fees. § 9.20.080(A)-(B). The Board "shall refer such application to the Sheriff for investigation to determine suitability for approval or consent of the Board to receive a license." § 9.20.080(C). "The application shall be made upon such forms as the Board may prescribe and shall contain" specific information enumerated in the Code. § 9.20.090 (listing the minimal required information).

After the Sheriff "conduct[s] a full investigation on the information pertaining to the license application," the Sheriff "shall report upon it, in writing, at the following regular meeting of the Board." § 9.20.100(A)-(B). "Upon approval of all applications connected with a house of prostitution, the Board may issue a license[.]" § 9.20.110(C). The Board must "grant or refuse to grant the license prayed for or enter any other order consistent with this chapter[.]" § 9.20.100(C). Once a license has been issued, "[t]he Board has the sole authority to cancel and rescind any and all such licenses for cause, after hearing, as provided in this chapter[.]" § 9.20.110(B).

"No applicant has any right to receive a license, and any license issued and received is a revocable privilege personal to the holder thereof, and such holder acquires no vested right therein or thereunder[.]" § 9.20.110(10). "The issuance and acceptance of a license shall constitute an undertaking and agreement by the licensee and his agents and employees … that they will be bound by the terms, conditions and provisions of this chapter" and "shall include a consent to, and acknowledgement of the power and authority of, the Sheriff … to enter the premises to which the license applies, at any time during the day or night, without reservation[.]" § 9.20.110(9).

"The Board may refuse to grant a license to any applicant … [w]ho makes any untrue statement of a material fact in any application, notice, statement or report filed with the Board in compliance with the provisions of this chapter, or willfully omits to state in any such application, notice, statement or report any material fact which is required to be stated therein, or omits to state

a material fact necessary to make the fact stated in view of the circumstances under which they were stated, not misleading." § 9.20.120(E). The Board may also "refuse to grant a license to any applicant … [w]hose license issued under this chapter has been revoked for cause." § 9.20.120(J).

A license is "issued for a quarterly period." § 9.20.110(C)(6). "Thirty (30) days before the expiration date of any license, licensees shall apply to the Sheriff on the form provided for renewal." § 9.20.110(C)(7). "Failure of any licensee to apply for a renewal, as required in subsection C7 of this section, shall result in an automatic revocation of the license on the expiration date thereof. Any license thus revoked may be reinstated only upon compliance by the licensee with the requirements of this chapter relating to original license application and issuance[.]" § 9.20.110(C)(8).

Even if an applicant obtains a brothel license and becomes a licensee, "[t]he Board may impose sanctions" on any licensee. § 9.20.170(A). Sanctions include "[l]imiting, suspending, restricting or revoking a license and/or registration card." § 9.20.020. The Board may impose sanctions for any of the causes enumerated in the Code, including "[a]ny cause that would constitute grounds for denial of a license[.]" § 9.20.170(A)(1). But "before taking any disciplinary action against the licensee …," the Board must "[p]rovide the licensee […] against whom the proceedings are brought, written specifications charging the licensee […] with the acts or failures upon which the disciplinary proceedings are brought." § 9.20.170(B)(1). The Board must also "[g]ive written notice of hearings, providing the time, date and place." § 9.20.170(B)(4).

### b. Plaintiffs' Brothel License And Protected Speech Activity

The Sheriff's Office generally disseminates a "Renewal Notice" form to brothel owners approximately two weeks before the beginning of a new quarter—the date when their license expires. The form indicates the amount that a brothel owner must pay to renew its license. The amount required for renewal can vary by quarter for the same brothel owner. Most brothel licensees do not return the form; the licensees instead remit only their licensing fees. The forms received by the Sheriff's Office are shredded by employees of the Sheriff's Office. The Sheriff's Office does not ordinarily track late payments as there are no additional fees for paying late.

Hof, through Cherry Patch, LLC, has owned and managed a brothel known as the Love

1  Ranch South in Nye County since 2010. To operate the brothel, Hof has maintained a brothel
2  license issued to him under Chapter 9 of the Nye County Code.

3  On December 28, 2017, Hof along with two other plaintiffs filed a lawsuit in state court
4  (which was later removed to this Court) that named as one of the defendants, Commissioner
5  Andrew "Butch" Borasky. In this case, Hof et al. v. Borasky et al., 2:18-cv-00543-GMN-NJK,
6  Hof alleged that Borasky defamed him by suggesting at a Board meeting that if he were ever
7  murdered that law enforcement officials should investigate Hof and the other plaintiffs in that case.
8  This litigation is ongoing.

9  On February 5, 2018, Hof and Cherry Patch, LLC filed a lawsuit in this Court, Hof et al.
10 v. Nye County et al., 2:18-cv-00211-RFB-GWF. This lawsuit named as Defendants, the Nye
11 County Board of County Commissioners, Commissioner Dan Schinhofen (in his personal and
12 official capacity), the Nye County Sheriff's Office, and Sheriff Sharon Wehrly (in her personal
13 and official capacity). This lawsuit alleges that Commissioner Schinhofen directed Sheriff Wehrly
14 to violate Hof's First Amendment rights by ordering her to censor signs advertising his brothel
15 business in Nye County. This litigation is ongoing.

16 On February 20, 2018 (the "February 20 Meeting"), the Board revoked Hof's brothel
17 license for Code violations. On March 16, 2018, the Board had a special meeting and voted to
18 reinstate Hof's license for the Love Ranch after he brought the brothel into compliance with the
19 Code. At the February 20 Meeting with counsel present, Commissioners Schinhofen and Borasky
20 and Sheriff Wehrly all indicated that they believed that they had conflicts of interest with respect
21 to Hof and the Love Ranch, so they recused themselves from voting regarding Hof's license at this
22 meeting. These officials cited Nevada Revised Statute ("NRS") 281A.420 as a basis for their
23 abstention. Schinhofen, Borasky and Wehrly similarly recused themselves from voting at the
24 March meeting.

25 In May and June 2018 Commissioner Schinhofen and Hof were both involved in election
26 campaigns. While not running against Schinhofen, Hof had on his property signs expressing his
27 negative views of Schinhofen and urging voters not to reelect Schinhofen. On June 7, 2018,
28 County officials went onto Hof's property and removed one of the signs containing political

content. On June 9, 2018, Hof filed another lawsuit in this Court, Hof v. Nye County et al., 2:18-cv-1050-RFB-GWF, against the County and County officials, including Commissioner Schinhofen, Sheriff Sharon Wehrly and the Nye County Board of Commissioners. Hof alleged that his Due Process rights had been violated when the sign was removed from his property. This Court issued an injunctive order to the County on June 10, 2018 directing it to return the sign, as the Court found that there was a likelihood of success on the merits that Hof's Due Process rights had been violated by the removal of the sign.

Later in June 2018, Schinhofen lost his political campaign for reelection in Nevada's primary elections. Schinhofen appeared on a radio interview less than two weeks later. During the interview, Schinhofen blamed Hof for his loss in the primary elections. Schinhofen referred to Hof as a "pain" and a "pimp" throughout the interview. When asked if he, as a Republican, would vote for Hof or Hof's Democratic opponent, Schinhofen responded: "Real simple: pimp, school teacher. Real simple." Schinhofen also sang a song that he wrote to conclude the interview, in which he expressed animosity for Hof and again referred to him as a "pimp."

For the past eight years prior to August 7, 2018, Hof has renewed his license for Love Ranch in a similar manner. Specifically, Hof paid the renewal fee for his license only after receiving a "Renewal Notice" form from the Sheriff's Office that stated the amount due and the payment due date. He did not return the form itself; he simply would send in the payment. Other brothel owners also renewed their licenses in this manner. He and other brothel owners have consistently received this form within two weeks of the expiration of their licenses even though they are required under the plain language of the Code to apply for renewal at least thirty days prior to the expiration of their licenses. § 9.20.110(C)(7). Hof's (and all other brothel owners') manner of renewal was inconsistent with the explicit language of the Code yet the Board granted his applications for renewal each time he applied prior to August 2018. Thus, historically the Board has effectively allowed the brothels' licenses to expire by operation of the Code and then allowed them to continue to operate upon these expired licenses until the County received the renewal fee. Upon receipt of the fee, the County would renew the licenses, absent any issues, at a Board meeting which generally occurred after the licenses had expired.

Between March 16, 2018 when Hof's license was renewed until August 7, 2018, when the Board voted to revoke his license, the Board did not receive any notification from the County Manager or the Sheriff—the two County officials charged with directly evaluating Code compliance of brothels—that Hof or the Love Ranch were not in compliance with County Codes regarding the operation of the Love Ranch.

On August 7, 2018, the Nye County Commissioners held a Board meeting to vote on renewal applications for brothel licenses. The Sheriff's Office recommended approval of Hof's license. The Town Manager and the Sheriff confirmed in documents submitted to the County Commissioners that Hof and the Love Ranch were "in compliance" with all County Codes regarding brothels.

Commissioner Lorinda Wichman ("Wichman"), who testified at the hearing in this case, initiated the discussion at the August 18 meeting about Hof's pending brothel license renewal application. Wichman argued that the Love Ranch had existing unresolved Code violations and that Love Ranch had applied for renewal in an untimely manner. She also referenced prior Code violations and hearings regarding the brothel. Commissioner Wichman did not have actual knowledge of Code violations by the brothel at the time of the August 2018 hearing; rather, she was informed of these alleged ongoing Code violations by Commissioner Schinhofen.

Commissioners also cited the provision of the Code that required Hof to apply for renewal thirty days before his license expired and the provision of the Code that allowed the Board to deny a renewal application based on a license previously being revoked for cause. The record is devoid of any documentation to support a conclusion that Hof was in violation of the Code from March 2018 through August 2018. The record from the hearing reflects that the County Manager and Sheriff had certified to the Board that in fact the Love Ranch was in full compliance with County Codes.

After Wichman stated she would entertain a motion to deny Hof's application, Commissioner Donna Cox ("Cox") suggested that the Board should hold the application until the next meeting based on the Agenda suggesting the application would be approved. She further noted that neither Hof nor his attorney were present. County counsel was not present. When no

other Commissioner made a motion to deny the application, Wichman momentarily relinquished her position as the chair of the meeting, which prevented her from making a motion. She then moved to deny Hof's renewal application. Wichman's motion passed on a three-to-two count. Wichman, Borasky, and Schinhofen voted to deny the renewal while John Koenig ("Koenig") and Cox voted against the denial. Sheriff Wehrly initially voted but then withdrew her vote and abstained because of the previous conflict of interest arising from the lawsuits that Hof had filed.

## III. LEGAL STANDARD

The analysis for a temporary restraining order is "substantially identical" to that of a preliminary injunction. Stuhlbarg Intern. Sales Co, Inc. v. John D. Brush & Co., Inc., 240 F.3d 832, 839 n.7 (9th Cir. 2001). In this case, the Court construes the Plaintiffs' motion as one seeking a preliminary injunction rather than a TRO as the Court has permitted the Defendants to respond and the Court has held a hearing on the motion as it would with a preliminary injunction.

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, a plaintiff must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that the public interest favors an injunction." Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1071 (9th Cir. 2014), as amended (Mar. 11, 2014) (citing Winter, 555 U.S. 7, 20 (2008)). A preliminary injunction may also issue under the "serious questions" test. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134 (9th Cir. 2011) (affirming the continued viability of this doctrine post-Winter). According to this test, a plaintiff can obtain a preliminary injunction by demonstrating "that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor," in addition to the other Winter elements. Id. at 1134-35 (citation omitted).

## IV. DISCUSSION

The Court finds that the requirements for issuing a preliminary injunction are satisfied. The Court incorporates by reference its findings, analysis, and holding from the hearing on August 27, 2018.

### a. Likelihood of Success on the Merits

The Court finds that Plaintiffs are likely to succeed on the merits of their First Amendment Claim under the United States Constitution (and Nevada Constitution), or that the Plaintiffs have raised a serious question going to the merits of this Claim. As the Court is granting the preliminary injunction on the basis of the First Amendment Claim, the Court does not reach the issue of whether an injunction would issue under the Due Process Claims.

Plaintiffs assert a First Amendment retaliation claim against Defendants. To bring a Section 1983 claim for First Amendment retaliation against public officials, a plaintiff must allege that "(1) it engaged in constitutionally protected activity; (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct—i.e., that there was a nexus between the defendant's actions and an intent to chill speech." Arizona Students' Ass'n v. Arizona Bd. of Regents, 824 F.3d 858, 867 (9th Cir. 2016) (internal citations and quotations omitted). "Once a plaintiff has made such a showing, the burden shifts to the government to show that it would have taken the same action even in the absence of the protected conduct." O'Brien v. Welty, 818 F.3d 920, 932 (9th Cir. 2016). "To meet this burden, a defendant must show by a preponderance of the evidence that it *would* have reached the same decision; it is insufficient to show merely that it *could* have reached the same decision." CarePartners, LLC v. Lashway, 545 F.3d 867, 877 (9th Cir. 2008) (emphasis in original). Further, to prevail on such a claim, a plaintiff need only show that the defendant intended to interfere with the plaintiff's First Amendment rights and that it suffered some injury as a result; the plaintiff is not required to demonstrate that its speech was actually suppressed or inhibited." Arizona Students' Ass'n, 824 F.3d at 867 (internal citations and quotations omitted).

"Otherwise lawful government action may nonetheless be unlawful if motivated by retaliation for having engaged in activity protected under the First Amendment." O'Brien, 818

F.3d at 932. The Ninth Circuit has held that a division of a state or a state official "may not retaliate against a person by depriving him of a valuable government benefit that that person previously enjoyed, conditioning receipt of a government benefit on a promise to limit speech, or refusing to grant a benefit on the basis of speech." Arizona Students' Ass'n, 824 F.3d at 858. A valuable government benefit includes a business license. See id.; see also CarePartners, LLC, 545 F.3d at 867 (revocation of a business license in retaliation to political speech activated First Amendment protection).

The Court finds that Plaintiffs are likely to succeed on the merits of their First Amendment Claim. Plaintiffs first satisfy the protected activity element. Hof engaged in protected speech by filing the prior lawsuits against the Nye County Board of Commissioners and individual Commissioners—including against the individual Defendants herein—and by engaging in political speech that criticized Commissioners, such as Commissioner Schinhofen. See id. at 876–77 (recognizing a judicial action and political expression as protected speech).

Plaintiffs also satisfy the second required element for their First Amendment Claim. "[T]he government may chill speech by threatening or causing pecuniary harm." Arizona Students' Asss'n, at 868 (citing Bd. of Cty. Comm'rs v. Umbehr, 518 U.S. 668, 674 (1996)). "Importantly, the test for determining whether the alleged retaliatory conduct chills free speech is objective; it asks whether the retaliatory acts would lead ordinary [applicants] ... in the plaintiffs' position to refrain from protected speech." Id. Defendants caused pecuniary harm to Plaintiffs by refusing to renew their brothel license, which in turn forced Plaintiffs' business to cease operation. The Court finds Defendants' actions would cause an ordinary brothel license applicant to refrain from filing a lawsuit or engaging in critical speech regarding the Commissioners.

Finally, Plaintiffs raise a serious question as to Defendants' motivation for refusing to renew Plaintiffs' brothel license. "A plaintiff may establish motive using direct or circumstantial evidence." Id. at 870. "Temporal proximity between the protected speech and the retaliatory conduct" is relevant to revealing pretextual or false reasons for a defendant's conduct. Id. (stating courts consider temporal proximity for retaliation claims in the employment context). Plaintiffs offer both direct and circumstantial evidence to establish Defendants refused to renew the brothel

license in retaliation to Hof's protected speech.

First, the temporal proximity between the protected speech and Defendants' decision to deny Plaintiffs' renewal application suggests Defendants acted with a retaliatory motive when denying the renewal application. Plaintiffs have owned the brothel for eight years. Based on the Code's requirement that a license be renewed quarterly, Plaintiffs have renewed the license approximately thirty-two times. Plaintiffs renewed their license in the same manner each time. Hof then engaged in protected activity directed to the Board and various individual Commissioners and the Sheriff. This protected activity culminated in this Court finding in June of 2018 that the Board had likely violated Hof's Due Process rights in removing a sign from his property and his protected activity was linked to one Commissioner losing his reelection campaign also in June of 2018. Then in August, the Board reverses course as to Hof and Cherry Patch. At that hearing two Commissioners, Borasky and Schinhofen, who had previously recused themselves for conflicts with Hof inexplicably decided to participate in the proceedings and voted not to renew Hof's license. And the Board which had previously been aware of these same alleged Code violations when it decided to reinstate Hof's license in March 2018 decided not renew his license. The proximity of the protected activity to the retaliatory conduct supports a finding that the Board and individuals Commissioners retaliated against Hof for engaging in this protected activity.

Additionally, the Court finds the argument that the license should not have been renewed because the application was untimely to be specious and pretextual. The County historically permitted all of the brothels to renew their licenses after they had expired. This occurred primarily because the County itself would send out the renewal notices, which enumerated the fees to be paid for the renewal, after the deadline for renewal. The Board's meetings to consider the renewals were also set after the licenses had already expired. Thus, the Board had historically permitted all of the licenses to expire without consequence due to its own procedures for renewal.

Third, Commissioner Schinhofen, had publicly expressed his disdain for Hof. More importantly, he publicly blamed Hof for his reelection loss. He had been the target of some of Hof's protected political speech. Upon losing his election and blaming Hof for his loss, he decided without explanation at the August meeting that he no longer had a conflict with Hof and voted not

to renew Hof's license. These facts support a finding that there is a likelihood of success in establishing retaliatory motive for Schinhofen's vote and conduct in the August proceedings.

Both Commissioners Borasky and Schinhofen contradicted their February 2018 and March 2018 disclosures of conflict of interest and recusals with matters concerning Hof by voting on Plaintiffs' renewal application in August 2018 despite the fact that the earlier lawsuits remain pending. In fact, additional lawsuits had since been filed. These Commissioners' contradictory act of voting on Plaintiffs' renewal application—in a vote requiring their votes to pass—contributes to the finding that Defendants acted with a retaliatory motive in response to protected activity when denying Hof's renewal application.

Finally, Defendants citations to prior show cause hearings and other proffered reasons for not renewing the license do not persuade the Court that Defendants did not act in retaliation. "It is not enough for Defendants to show that they "*could* have reached the same decision"; Defendants must instead show they "*would* have reached the same decision. CarePartners, LLC, 545 F.3d at 877 (emphasis in original). No evidence on record supports Defendants' stated reasons for denying the application based on ongoing Code infractions, as Hof and the Love Ranch were in compliance with the Code. Further, Defendants allowed Plaintiffs to renew the license for eight years in a certain manner and then refused to continue to allow Plaintiffs to renew their license in the same manner only after the lawsuits were filed and Hof engaged in protected activity, including political speech regarding individual Defendants. Based on the combination of the lack of evidence and the timing of the decision to selectively rely upon unsupported allegations of Code violations, the Court finds with regard to this motion that Defendants have not shown that they would have denied Plaintiffs' renewal application in the absence of the protected speech; they have, at best, shown that they could have done so.

### b. Irreparable Harm

Plaintiffs argue the denial of the renewal application causes irreparable harm based on the reputational damage to the brothel. The Court agrees. While the reputation of a business is an important factor to the success of the business ordinarily, it is even more important in this case due to the nature of the business. Shutting down the brothel for Code violations will likely cause

reputational harm.

### c. Balance of Equities

The Court finds that the balance of equities tips sharply in favor of Plaintiffs, given that the United States Constitution and federal law provide explicit protections for political speech and certain protected activity. The same reasons that establish Plaintiffs' likelihood of success on the merits underlie the balance of equities—the First Amendment serves to protect persons from precisely the type of retaliation Plaintiffs allege in this case.

### d. Public Interest

The Court also finds that the public interest is in Plaintiffs' favor. The public has a strong interest in maintaining the protections afforded by the First Amendment.

## V. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiffs' Emergency Motion for Temporary Restraining Order (ECF No. 3) is GRANTED.

**IT IS FURTHER ORDERED** that Defendants reinstate Plaintiffs' brothel license and allow Plaintiffs' business to reopen by no later than 8:00 a.m. on August 28, 2018.

**IT IS FURTHER ORDERED** that Commissioners Schinhofen and Borasky are enjoined from participating in any decision by the Board in relation to Plaintiffs' brothel license during the pendency of this action.

**IT IS FURTHER ORDERED** that Defendant Nye County may take any actions it deems appropriate to enforce its own ordinances, but Defendants must provide written documentation to Plaintiffs regarding existing or future Code violations before it takes action during the pendency of this action.

**IT IS FURTHER ORDERED** that, by consent of the parties, this order also applies to Plaintiffs' liquor licenses.

**IT IS FURTHER ORDERED** that Plaintiffs pay a $5,000.00 security.

**IT IS FURTHER ORDERED** that this written order shall be interpreted consistent with this Court's oral ruling on the motion on August 27, 2018.

DATED this 28th day of August, 2018.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**